Case number 22-3061, United States of America versus Shane Browne appellant. Mr. McCobie for the appellant, Mr. Bernie for the appellate. Good morning. May it please the court. Max McCobie for appellant Shane Browne. Your Honor, we urge this court to find that trial counsel blow was ineffective and that it made a difference in the outcome of the case and to remand for a new trial. We submitted what we believe is more than enough to show that to overcome the strong presumption that any of the errors that we pledge trial tactics. Just to start with the two elements, ineffective and then prejudice, the government does not dispute that the case depended on a sole witness who was impeached on major points that he had a motive to fabricate and there was absolutely no corroboration to the single witness, the Lyft driver. Therefore, any one thing, any one of ineffective assistance of counsel claim and make a difference. We submit that there was a complete failure. To investigate the government says, well, it was trial tactics. It was. A pure reasonable doubt strategy. Well, you don't reach that. If you don't interview critical witnesses to the case who can directly impeach Mr. Flores, the complaining witness, the Lyft driver driver on. On key points, including whether there was an argument at the trunk of the car in the McDonald's parking lot. Whether there was an argument in the car, these are points where. Mr. Brown was on the phone with a friend. Who overheard and could have testified there was no argument. Well, the decision not to call him as a witness can't be a trial tactic. If trial counsel admits, you never interviewed. That witness Mr. Keslow in the 1st place. That is what the United under the United States versus Mohammed says. Is a complete failure to investigate. Moreover, it's it's. Abundantly clear that there was. Ineffective assistance of counsel with the drugs. No effort was made to. File a motion eliminate to suppress 70 pounds of marijuana that was found several days later in his apartment in the search for the gun. Because trial counsel said they didn't think they could win. Well, that's not a trial tactic and they would have won. Some of it would have been suppressed, nor was there a trial tactic in failing to object to 70 pounds of the noxious fumes of marijuana. Published to the jury where the government prosecutor actually warned the judge and everybody in the courtroom that it was gonna be an overpowering smell. They decided not to object to that because they thought it would be funny to the, to the jury to see all that for all those drugs. And endear the jury to Mr. Brown as a bumbling, incompetent criminal. That can't be a trial tactic that's acceptable to this court. And it is contrary to decades of accepted defense doctrine to object to prejudicial evidence. That's the whole point of a trial defense subjects to prejudicial. Evidence in the prosecution tries to introduce it. Yeah. When, when this case was first on appeal to the circuit, we remanded for further factual findings on the ineffective assistance claim that the main focus of our panel opinion was on these Miranda. Claims what happened to those below? So. Um, he, I mean, that was the main focus of why we had, we had remanded. And then it, I don't, I didn't see much about that in the record. The Miranda warnings were not given any in the video with the, with the detective. He. He made some points that were put in an affidavit for a search warrant. So, ordinarily, we would move to suppress. However, Mr. Flores. Also, um, made representations for the search warrant. So, under a independent source doctrine, the government may have been successful against the search warrant. So, if you strike out the language with Mr. Brown from the failure to Miranda, and just question him, even though he asked for a lawyer, he did ask for a lawyer in the video. And the detective question for another 40 minutes without getting a lawyer. All of that, if you strike that out of the search warrant, you still have the complaining witnesses. Claim that he had a gun and he pointed out him and he ran into his apartment. So I, it was just wasn't. I looked at it closely. Now, what we did find when we remanded it for evidence was the results of the cell phone search. In which trial counsel clearly never read it was, it was, it was only produced. 2 days before trial, we know they didn't read it because it had. People like Brian sands as witnesses in the call logs, and they never interviewed Brian sands on the way up to Aberdeen. Well, that that that tells you they didn't read it. The search phone results. Now, I, I, I read them when we remanded it. I got all the evidence. I read it. And I was shocked to find that there was a call log with 3 witnesses. Brian stands on the way up and on the way down Jordan and his girlfriend, Katie and that accounts for an hour and 15 minutes of the 1 hour and 20 minutes when he was supposedly pointing the gun it's accounted for. He's talking to for a good 30 minutes. Then he's looking at these adult web searches for another 30 minutes. And then he's talking to his girlfriend for 14 minutes. All the while he's pointing a weapon. Well, I, I didn't know that until I looked at the evidence and realize that. There's no way defense counsel could have read those call logs. And the text messages and the web searches and figured this all out. Also, it's clear they didn't read. The fact that floors had been charged with overstaying his visa for 10 years, and was about to be was charged fingerprinted and arrested. They didn't know that. They said that in the ineffective system council hearing. They didn't realize that. Well, if you don't realize that means you didn't read. The discovery now, now you're also pointing out that there should have been certain witnesses called. And this seems to have been a trial strategy to essentially cross examine and attack the government's witnesses, as opposed to putting forth a case. Because you're, you seem to be focusing on not interviewing witnesses, not calling witnesses, but. The trial strategy was to attack the government's case, not. Right for the case, right? And I'm submitting that you can't have that trial strategy. If you don't interview them in the 1st place under the line of cases of. USB Barbara Muhammad, you can't have a trial strategy if you don't know what the witnesses say. I mean, it's, it's, it's hindsight and convenient to later say, oh, we had a pure reasonable doubt strategy. We're going to call them, but you can't have that if you don't do the work in the 1st place, just like they didn't do a number of things in this case. Now, what they should have done with the discovery was ask for continuance. But they didn't, they just went ahead with the trial. Now, the pure reasonable doubt strategy. Is is extremely tenuous in itself because they never actually argued it in closing argument. They didn't say, ladies and gentlemen, the defense has no burden of proof. We have no burden to offer evidence. They didn't argue any of that. In fact, they uttered the words reasonable doubt twice and not in any context that would. That would project any reasonable doubt strategy that is an after the fact, convenient excuse for not interviewing witnesses and not presenting evidence. And also, the other thing is, let's assume they had interviewed for the prejudice argument. Mr. Keslow and Mr. Sands and all the people that account for 1 hour and 15 minutes of 1 hour and 30 minutes when you supposedly pointing a gun the whole time that he couldn't describe, by the way, and the government actually had to describe the gun to the jury and leading questions because he couldn't do it. But you also have to show likelihood of a different result. Yes. So how are you able to do that? We submit that that there's a strong likelihood that there were to be different result because he was so badly impeached. I mean, he was impeached on he told the police that that Mr. Brown approached him in the parking lot with the gun brandishing in the parking lot. When the McDonald's video came out a week later, I mean, a week before trial, he changed it to oh, no, he pointed the gun in the car. Well, how do you get that wrong unless you're just making this up? He was impeached on that. He was also impeached on. He said, Brown approached him in the parking lot with the brandishing the gun and forced and forced him to open the trunk. Well, in the video, it shows Brown walking in the parking lot, babbling on the phone with his friend Kessler, and it shows Mr. Flores opening the trunk for him. Well, why? Because Mr. Flores waited seventeen minutes in the parking lot for no good reason. Clearly to drive Mr. Brown home from Aberdeen, he's not going to take a Lyft drive all the way up to Aberdeen an hour and a half from D.C. and not be paid to drive back. But what does he do? He waits in the parking lot during that wait. He talks to his wife. He admits on the witness stand. A couple of times and his wife got a U visa as a victim of violent crime and got to stay in the United States, he was going to be deported to El Salvador, which is extremely violent, horrible country to be deported to and what he saw an opportunity. This is a young black man. He smelled the cannabis. He had a suitcase. I mean, if you're going to pick somebody, that's the guy you pick to make up an armed kidnapping case. You just make it up. And so he thought about it. Seventeen minutes in the parking lot. And he's like, OK, OK. And then they drive back. Meanwhile, Shane Brown's babbling on the phone with his friend Jordan Kessler. He's babbling with his girlfriend. He's looking at pictures of naked women an hour and 15 minutes. I mean, the idea that any if Mr. Kessler had been called as a witness, who is a cinematographer in Hollywood, no criminal history, he has highly impressive movie credits as a cinematographer. He would have testified to say, no, there was no argument. I overheard this. No, there was no argument at the trunk of the car. No, there was no argument inside the car. There was not. And also he would project a normal conversation. That's the other thing. Why would it made a difference? They would project a normal conversation about life. They were talking about cryptocurrency. If a jury hears all that, just a normal conversation with three people. The idea that it would sway one juror to make a difference in this case is is is extremely compelling. And not to mention the 78 pounds of marijuana in front. Thank you. Thank you. And a good morning, may it please the court. Kevin burning for the United States. I'll focus my oral argument just on most of the points that Helen just brought up, but I just want to, at a broad level, say that I think with all of these issues that he is raising, the record shows that defense counsel was aware of them and made reasonable suggestions. And reasonable choices for all of their decisions. And that is all that's trickling in the 6th amendment fires. I can make a reasonable choice when you haven't talked to the person would be the subject of discussion. So, your honor, your effort to suggest that trial judge made a finding there, at least for me, doesn't convince that. Was not accurate in suggesting that the defense counsel made a decision based on any conversation with that's just not accurate. But in any event, I don't know how you can make a reason. Choices defense counsel, if you haven't talked to potential witnesses. So, your honor, I think on appeal is arguing that council never talked with Mr. Kessler, right? That that is incorrect. That is not incorrect. I mean, I looked at your attempt to deal with what the trial court said the trial courts. Attempt to give you some help, I find totally unpersuasive. There's nothing to indicate that defense counsel at any reasonable conversation with casual and went through what any good defense counsel will do in talking with a witness. You just don't have it in my view in the record. I understand that your honor disagrees. I mean, I would respectively disagree with your honor. Could I just make the record for for why I disagree understanding? Of course, that you do disagree. I mean, I'm looking at J. A. 966 and Mr. Fairley says I spoke to Jordan at least once, I think maybe twice before trial. There's some follow up questions about, you know, what did he also said? If he said I didn't talk to him, I didn't talk to him. But I think the wording I think the exact wording of Mr. What Mr. Fairley says is important because the question is, Mr. Kessler testified that you did not interview him on the conversation as to what was said between him and Mr. Brown. Would you dispute that testimony? And all he says, if he says that I didn't, then that could be accurate. Well, that's I don't understand. How can you possibly say that that's persuasive evidence in support of your position? If the person being accused says, well, if he says that and it could be accurate, a defense counsel who has interviewed or talked with or investigated potentially critical witness, at least in my experiences, does not forget it. Well, Your Honor, I would say that Mr. Fairley said several times that he was testifying four years after the events in question. And this is a factual finding that the district court made. That's right. He spoke with the district court. I'm not going to go over the exact words. I'm just telling you, having carefully read what the district court said, the district court finding, to the extent that it is a finding, doesn't hold up. He's not clearly saying that defense counsel clearly investigated this potential witness. That's not what the district court said. Well, the district court does say on, I'm looking at 1192 note two. The witnesses might be saying, Kessler being included in the witnesses here, that they never participate in a formal interview with counsel. The evidence does not support that allocation based on the facts noted above. And the district court is quoting some of the quotes that I just said. Counsel's conversations with the witnesses were clearly substantive. The court will not quibble on semantics, i.e. conversation versus interview. The court credits trial counsel's impression of the status of these interactions, not those of the lay witnesses. So that would be a credit that would post that he was never interviewed by trial counsel. Kessler says that, but there are many times when the district court credits barely in Califat over Kessler. He says specifically, I did interview him and then I made an informed judgment as to whether to use him or not. Where is that? I'm missing it. So, first of all, on the first part, when he says, I spoke with him on J.A. 966, I spoke to Jordan at least once, I think maybe twice before trial. Then the follow up question is, did you interview him as to what he said to Mr. Brown and what Mr. Brown said to him on the call? Answer, I don't recall with 100%, you know, specificity. I'm sure we did. I'm sure I said, what did you guys talk about? Yeah, and then. The claimant says it never happened, and when defense counsel was asked about him, he said, well, if he says I didn't interview him, I guess I didn't know, but he doesn't say that exactly, your honor. He says I can't say something to that effect. Right. I think the exact words are very important, your honor. He says this is J.A. 967 to 968. Again, I can't be certain I don't have I went back through my file. I don't have notes on what Jordan and I talked about, which implies right there that they did talk about things. So if he says we didn't talk about it, then that definitely could be accurate. Mr. Fairley throughout his testimony is stressing that this happened four years after the fact, and he doesn't remember all the details of these conversations. But he remembers that he spoke with Kessler and he says, I'm sure I would have discussed what Mr. Brown and they were getting a lot more out of it than I got. But let me just say, say this to wrap to wrap up my points on this. I understand. The passages that your honor's looking at, and I've obviously put forward the passages that I'm looking. But the district court made a factual finding, and that factual finding would be subject to clear error. Appellant has not even argued on appeal that the district court made clear error with regard to that findings. That is a factual binding and appellant has to show that there was clear error. Now, this court recently said in Antonio under that standard review, a factual finding that is plausible in light of the full record, even if another is equally or more. So must govern. That's Antonio at nine fifty five, six, sixty three, four, nine, forty eight, nine, fifty five. So perhaps one could read the record. And even say it is more plausible. That fairly did not speak with Kessler that would fail under this standard review, the court credits trial counsel's impression of the status of these interaction, which to me means it includes trial. Counsel's indication. Well, if he says I didn't talk to him, then maybe I didn't I can't get anything more out of it. That's you're talking about clear error, clear error with respect to that. I would. But right before that counsel's impression, counsel's impression was, if he says I didn't talk to him, then I didn't talk to him. But right before that, the trial court says the district court says, based on the facts noted above, counsel's conversations with the witnesses were clearly substance. That is a factual line that has support in the record council. It is not substantive in the sense that it's telling me anything with respect to what? Because the trial court goes on to say what I just said counsel's impression of the status. So, where's the substance that supports your claim that counsel investigated this witness and clearly made an informed judgment that let's just let the government put in their case and we'll sit. We'll say they haven't met their burden. Where is that? I would take 2 parts of the record and combine them to answer that question. 1st of all, on J, a 960 cents. Fairly says in response to a question as to whether he discussed with Mr. Brown, what Mr. Brown said to him on the call. He says, I'm sure we did. I'm sure I said, what did you guys talk about? Then, when it comes to whether he made an informed decision based on that. At the hearing, Mr. fairly testifies, and this is on 1022 to 1023 about the decision not to call Kessler. The decision not to call it, not that he was just. You know, it never occurred to him. He was just not thinking about it at all. He didn't know about it. So, just sort of generally, it wasn't worth it. I guess would be the best way to put it. To water down the reasonable doubt defense by calling a witness with marginal value at best. So, counsel made an informed decision based on what they knew and I would just point out to. When counsel is making the decision, the record reflects that even Mr. Brown. Did not think that Mr. Kessler was important. J, a 799, Mr. fairly says in his declaration. Mr. Brown did not feel strongly about calling Mr. Kessler. So, is saying, well, it's easy after the fact rationalize all of this. Appellant is trying to after the facts. Point to small details that even Mr. Brown did not think was important at the time. To try to get a new trial on this case. I see my time has expired. We've obviously spent a lot of time on Mr. Kessler. I'm happy to answer any other questions with respect to the marijuana. And then the comment about the naivety of defendant in that regard. How do you tie that together about bringing in that much marijuana? That kind of smell that older and then say that? Well, we were just trying to kind of have a picture of the defendant being naive. Well, I think it's actually effective. I think it was effective. 3 people both Califat fairly and the district court resided over the trial. Confirm that the jury was amused when the marijuana was rolled up. So, telling is saying, well, it had a noxious smell. I mean, there's no evidence in the record that the jury was offended by that. Or that they thought it was noxious. They were amused by it. The reason why in a way that was favorable for the defendant. Yes, because it's not I don't know how you conjure up this notion. Have piles of marijuana. And claim as well that the jury seemed amused. The music we're going to put this guy away a long time. I mean, it's not amusing. There was no attempt by defense counsel to in any way mitigate what was damning evidence sitting there in piles. No attempt whatsoever. So, your honor, I think the word amusing. We haven't talked about how the jury. It's they seem to be amused. But the point is not whether the jury thinks it's funnier. The point is whether it makes. Your point, not my point. Well, I'm trying to say the point is whether it makes Mr. Brown look naive. Because he has all of that marijuana. Sitting in his apartment where anyone can smell it. When the police executed the search warrant, they could smell marijuana coming out. He's hiding them in suitcases. He's not elaborately hiding this marijuana. So, if Mr. Brown is that naive, he's not a hardened criminal. He is not going to hold a gun to somebody's head. Or that's the defense theory. And that defense theory seemed to have been borne out because the jury acquitted Mr. Brown of every single gun charge in this case. They only convicted him of the non gun charges. And if he had been convicted of 924 C, he would have had a seven year mandatory minimum on top of everything that he is serving now. So, the point of this, I would just say in discussion is not to decide what is the best choice amongst all of these decisions that defense counsel faced. It's only to decide whether defense counsel acted reasonably. And on this record, especially given the many favorable outcomes that Mr. Brown ultimately received, we would submit that this court cannot find that trial counsel was so unreasonable as to violate the Sixth Amendment. But do you at least have that the marijuana in the form that it was shown to the jury would have made the kidnapping more probable? That there might have been a sense of propensity evidence there? I think it makes the kidnapping more probable in the sense that he is trying to, he is in a hurry and needs to get back to his marijuana stash. But I think there would have been plenty of other evidence that he was a marijuana dealer. There's no disputes that at trial it would have come out that he was a marijuana dealer. And this court has essentially said that in his previous decision on the direct appeal. So I think any prejudicial about harm to him would be very slight. And meanwhile, it feeds into this larger defense strategy to portray him as unable or unwilling to brandish a gun. Thank you, Mr. Bernie. Mr. McCoby, we'll give you two minutes for rebuttal. Good morning again. I just want to make a couple of points. It cannot be this court's decision that is acceptable not to object to overwhelmingly prejudiced evidence. It can't be. Overwhelmingly prejudiced evidence, prejudicial evidence. I mean, the 78 pounds of marijuana, even the judge said you can offer photographs. You don't have to just put it in front of the jury. I mean, he said that on the record. Not objecting the 78 pounds in front of the jury and where the prosecutor warns obnoxious smell in favor of a photograph is a trial strategy. And society has enough problems. A jury is going to hold it against a bumbling criminal as much as a malicious criminal. I don't know how they distinguish between bumbling and naive versus malicious or nefarious. But the government somehow says that a trial tactic by a defense attorney that distinguishes between nefarious and bumbling is going to make a difference with the jury. Jury's not going to make a difference. Jury's going to hold it against them. They're going to say, we want to bring order to society, and we're going to hold it against somebody who's bumbling like that. And if they had seen pictures, especially with marijuana being legal in the district certain portions, if they see pictures, it's going to have a completely different effect than a huge spread in front of them. Thirty six thousand dollars was spread in front of them. I want to say about Mr. Kessler. The evidence is undisputed that he did not interview. It's not it's not a question of what standard. I mean, the standard is de novo by this court. No deference is given to the district court, but it is undisputed. And when Mr. when the defense attorney said that on the witness stand, he said, look, I don't dispute it in this court. And I looked at cases where we have actually granted ineffective assistance of counsel just to kind of take the temperature of the court. And in the Loeffler v. Cooper decision, where it showed that there was a discussion about a plea deal with respect to intent to murder. And then the counsel advised that you probably wouldn't get murdered because there was a shooting below the waist. Then the court found that deficient and defective because it's actually wrong advice. Another case, United States v. Knight, in which the client was incorrectly advised that the plea offer came with 10 years in prison and then he rejected the plea offer and then actually got way more time, 22 years in the case of one defendant, 25 years in the case of another defendant. And again, showing that the advice was actually erroneous. So help me out with we're talking trial strategy. And then these cases where this court has said, yes, that's ineffective assistance of counsel seems to be with actual erroneous advice. Your Honor, I would just direct the court. I mean, we have erroneous advice here, like not advising on a blind plea to try to suppress information in the record that the plea was never offered. Yes, they admit we never recommended a blind plea to try to move to limit or suppress the 78 pounds of marijuana. They say that that's just bad advice and it cost them a responsibility penalty for sentencing. But other than that, I would just direct the court to look at U.S. v. Muhammad and U.S. v. Don't interview critical impeaching witnesses. But what's the most interesting interviewing any witnesses completely fail to investigate? Yes, it's a complete failure to investigate by their concession. They didn't interview Mr. Kessler. They didn't interview Mr. Sands. They don't dispute that. And he's on the call logs. You don't understand how important these witnesses are unless you read the call logs and say, oh, my God, all the times match up to the arm kidnapping. Maybe he didn't do the arm kidnapping. Let me interview them. If you don't read those call logs, you don't understand the significance. And they clearly didn't read it. It's just a pretrial failure to read the materials has to be assessed against them. And it can't be a trial strategy. And I just want to emphasize a couple of things. First of all, that Muhammad case, my colleague here said it mattered because Mr. Brown wasn't emphatic about interviewing Mr. Kessler and he wasn't that great a witness. Well, Muhammad makes the point that says even if the defendant's depressed or despondent or doesn't think you should that trial counsel should interview anyone, that doesn't matter. They haven't. Trial counsel has an independent duty to investigate no matter what defendant says. And I also want to emphasize. Let me ask you one thing. Yes. Opposing counsel suggests that you don't make the claim that the finding, the district court was clear. I'm looking at your brief again. I obviously surmise that that appears to be exactly what you're saying, that the factual findings were clearly erroneous. What is your response to them? You're not stating it the way counsel stated it. But do you think you raised the clear error objection? That's your responsibility. Absolutely. Your Honor, we raised the error by putting it directly before the court and to dispute the district court's finding. And we asked that it be over. It's one of our claims. I mean, it's a claim before this court. And our claim before the court is that there was a complete failure to investigate by interviewing Mr. Keslow. We put it before the court. They opposed. And we were arguing it here before the court. And the first appeal did have pre-trial failure to do pre-trial investigation. That was in the first appeal. And that was remanded to develop a record on that. And so that is properly before the court. I also want to emphasize that what a close call this case was. So single witness, any one of these factors would have made a difference. Moving to object, the 78 pounds would have made it. And we know it was a close call because the jury was deadlocked except for one count, which had to be the unopposed count three. Deadlocked. And it was a compromise verdict. They found him guilty of kidnapping without a gun and not guilty of kidnapping with a gun when the only threat of force was the gun. Well, that's a logically inconsistent verdict. That would be error if it was by a bench in a bench trial by a judge. But it's a compromise. Verdicts are allowed by juries in our system or juries under our system. But it shows with a deadlock that any slight difference would have made any, any, any one of these claims would have made a difference. And the standard is cumulative errors. It's not just one error. It's cumulative. All of these errors, all of the jury. The circuit has never said that that's the standard cumulative errors. That's not that cumulative errors. I mean, is there a case that says that's the standard for prejudice? Yeah, yeah, I, I apologize if that's if I argued that and they didn't get it. But I think if I have the standard wrong, I apologize. Okay. Are there any further questions for my colleagues? Thank you. This is.
judges: Rao, Childs, Edwards